UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Mar 01, 2021

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-10651-R |
| PENTECOST, Claude Daniel Jr., ) | Chapter 7 |
| PENTECOST, Jean Rae, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| WANDA G. BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. No. 20-1039-R |
| ) | |
| CLAUDE DANIEL PENTECOST, ) | |
| JR., ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION TO DISMISS**

Before the Court is the Special Entry of Appearance and Motion to Dismiss for Failure to State a Claim in Which Relief Can Be Granted (Adv. Doc. 7) ("Motion to Dismiss") filed by Debtor/Defendant Claude Daniel Pentecost, Jr. ("Pentecost") and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Adv. Doc. 8) filed by Plaintiff Wanda G. Berry ("Plaintiff").

**I.   Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.   Standard for Evaluating Motion to Dismiss**

Pentecost seeks dismissal of Plaintiff's Complaint (Adv. Doc. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7012(b). Rule 12(b)(6) provides for dismissal of a complaint at the pleading stage if it fails "to state a claim upon which relief can be granted."[1]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The Court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff."[4]

**III.   Contentions of the Parties**

In her Complaint, Plaintiff alleges that Pentecost, her long-time financial and investment advisor, is liable to her for an unspecified amount of damages for committing fraud and defalcation while acting in a fiduciary capacity. She seeks a determination that

---

[1]   Fed. R. Civ. P. 12(b)(6).

[2]   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[3]   Id.

[4]   Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013).

such debt is non-dischargeable under Section 523(a)(4) of the Bankruptcy Code.[5] Plaintiff further alleges that Pentecost is liable to her for an unspecified amount of damages arising from adjudicated violations of state securities laws, and that such debt is non-dischargeable under Section 523(a)(19). Pentecost's adjudicated violations of securities laws include borrowing money from Plaintiff, recommending unsuitable investments, and failing to disclose material conflicts of interest.

In his Motion to Dismiss, Pentecost contends that the Complaint was time-barred, and therefore should be summarily dismissed. He also argues that he is not liable to Plaintiff on the Unsecured Promissory Note (Demand) attached to the Complaint ("Note")[6] because "[t]echnically, the loan was not made to Mr. Pentecost" but to a limited liability company.[7]

Plaintiff contends that there is no deadline for filing a complaint seeking a determination of dischargeability under Section 523(a)(19); and that the deadline for filing a Section 523(a)(4) objection should be equitably tolled because Pentecost did not give Plaintiff adequate notice of the deadline and actively misled Plaintiff post-petition to prevent her from asserting her rights. With respect to the Note, Plaintiff contends that Pentecost has admitted in his schedules that he is personally liable to Plaintiff on the Note.

---

[5] Unless otherwise specified, all references to "Sections" are to sections in Title 11, United States Code.

[6] Exhibit 3 to Complaint.

[7] Motion to Dismiss at 3, ¶ 7.

IV. **Discussion**

In assessing the Motion to Dismiss, the Court has considered Pentecost's bankruptcy case filings and Plaintiff's Complaint and the exhibits attached thereto and incorporated therein,[8] viewed in the light most favorable to Plaintiff. Pentecost filed his petition for relief under Chapter 7 of the Bankruptcy Code on April 16, 2020.[9] On his Schedule F, Pentecost listed Plaintiff as an unsecured creditor holding an undisputed, non-contingent, liquidated claim in the amount of $35,000 arising from a "personal loan."[10]

On his Schedule F and on his Verification as to Official Creditor List ("Verified Official Creditor List"), both executed under penalty of perjury, Pentecost listed Plaintiff's address as XXXXX South 94th Place East, Tulsa, OK 74133-XXXX ("94th Place Address").[11] Pentecost knew that Plaintiff did not receive mail at the 94th Place Address.[12] Plaintiff "collects her mail at a drop box at XXXX E. 101st St., Suite XX, Tulsa, OK 74133-XXXX" ("101st Street Address").[13] "Pentecost has transacted with [Plaintiff] for over two decades and knew that [Plaintiff] does not receive mail that is posted to her [94th Place

---

[8] Rule 10(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7010, provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." See also Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1201 (10th Cir. 2011).

[9] Petition, Main Case Doc. 1.

[10] Id. at 38.

[11] Main Case Doc. 1 at 38, 70-75 (redaction by the Court).

[12] Complaint at 3-4, ¶12.

[13] Id. at 4, ¶ 12 (redaction by the Court).

4

Address]."[14] "[I]t is her [101st Street Address] that is listed on her bank account, brokerage account, and even Dan Pentecost's quarterly reports."[15] Further, the Note requires that payments and notices to Plaintiff be sent to the 101st Street Address.[16]

On April 16, 2020, the Court generated a Notice of Chapter 7 Bankruptcy Case (Official Form 309A) ("Chapter 7 Notice").[17] On April 19, 2020, the Bankruptcy Noticing Center mailed the Chapter 7 Notice to Plaintiff at the 94th Place Address.[18] The Chapter 7 Notice provided for a telephonic meeting of creditors on May 20, 2020, and a filing deadline of July 20, 2020, "to object to discharge or to challenge whether certain debts are dischargeable."[19]

Pentecost called Plaintiff on July 7, 2020, to discuss her investments and told her "for the first time that, he had filed for bankruptcy, but assured her that she did not need to worry because her investments with him and the loan that was made to him would not be affected by the bankruptcy."[20] "On July 10, 2020, [Plaintiff] met with Dan Pentecost at his office, where he again reiterated his assurances that she did not need to worry about her investments or the debt owed to her."[21] Plaintiff, a ninety-two year old widow, believed

---

[14]   Id.

[15]   Id.

[16]   Exhibit 3 to Complaint, ¶¶ 1, 9.

[17]   Main Case Doc. 7.

[18]   Main Case Doc. 8.

[19]   Main Case Doc. 7.

[20]   Complaint at 4-5, ¶ 14.

[21]   Id. at 5, ¶ 14.

5

Pentecost's representations, as he had been her trusted financial advisor for more than two decades.[22]

The deadline to file objections to discharge expired on July 20, 2020. An order of discharge was entered on July 28, 2020.[23] "On the same day of Dan Pentecost's discharge, [Plaintiff] received a call from the Oklahoma Department of Securities ["ODS"] and learned, for the first time that both her investments with Dan Pentecost and the loan that she gave him [were] in jeopardy."[24]

On August 3, 2020, the ODS Enforcement Division issued detailed proposed findings of fact and conclusions of law concerning unethical practices Pentecost undertook as investment advisor to Plaintiff, which practices constituted violations of Oklahoma securities laws and regulations.[25] The ODS Enforcement Division recommended that the Administrator of the ODS "summarily suspend" Pentecost's registrations pending a final determination of the pending proceeding to permanently revoke Pentecost's registrations and "impose any other sanctions deemed appropriate and authorized by law."[26] The Administrator adopted the proposed findings, entered an order summarily suspending Pentecost's registrations, and gave notice to Pentecost that the order would become final

---

[22]   Id. at 5, ¶ 15.
[23]   Main Case Doc. 24.
[24]   Complaint at 5, ¶ 16.
[25]   Exhibit 1 to Complaint.
[26]   Exhibit 1 to Complaint at 8.

thirty days after service unless he requested a hearing.[27] Nothing in the record indicates that Pentecost took issue with any of the facts found by the ODS, that he requested a hearing, or that further proceedings were held.

Plaintiff filed her Complaint with this Court on August 13, 2020. As stated above, the Note for which Pentecost claims he is not personally liable is attached to the Complaint. Relevant to Pentecost's contention, the Note provides that it "is made . . . by and between C Dan Pentecost, as managing partner, Sonus Rights Management LLC (the 'Borrower'), and [Plaintiff], an individual (the 'Payee')."[28] The Note was executed by Pentecost as follows:

> "C Dan Pentecost
>
> By: /s/C Dan Pentecost
> Name: C Dan Pentecost"[29]

A. The Complaint states a claim under Section 523(a)(19).

Section 523(a)(19) provides that a discharge entered in an individual debtor's case does not discharge any debt that –

(A) is for

> (i) the violation of any of the Federal securities laws . . . , any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

---

[27] Exhibit 2 to Complaint.
[28] Exhibit 3 to Complaint at 1.
[29] Exhibit 3 to Complaint at 4.

>    (B) results, before, on, or after the date on which the petition was filed, from-
>
>    >    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>    >
>    >    (ii) any settlement agreement entered into by the debtor; or
>    >
>    >    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.[30]

To state a claim that a debt is excepted from discharge under Section 523(a)(19), a complaint must contain sufficient factual matter, accepted as true, to demonstrate that the debt is for a violation of securities laws that is memorialized in a judgment, order, consent order, decree or settlement agreement. The memorialization of the debt may occur before, on, or after the date the debtor filed bankruptcy.[31]

In this case, the Complaint contains factual allegations and documentary support that, viewed in the light most favorable to Plaintiff, allows the Court to reasonably infer that Pentecost is liable to Plaintiff for any debt resulting from the ODS's adjudication that

---

[30]    11 U.S.C. § 523(a)(19).

[31]    The Court notes that Pentecost's Chapter 7 petition did not operate as a stay of –

>    (A)  the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power; [or]
>
>    (B)  the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power[.]

11 U.S.C. § 362(b)(25). The automatic stay terminated upon the closing of Pentecost's bankruptcy case. See 11 U.S.C. § 362(c).

Pentecost violated Oklahoma securities laws.[32] The ODS found that Pentecost violated state securities laws by (a) borrowing money from Plaintiff (and others); (b) recommending unsuitable transactions and investment strategies to Plaintiff; and (c) breaching his fiduciary duties to Plaintiff.[33] Pentecost admits in his Schedules that he borrowed money from Plaintiff which, in the recommendation and order, ODS found was a violation of securities laws.

It is unclear whether the ODS has determined an amount payable to Plaintiff arising from these violations, but it has determined that Pentecost is liable for such in an administrative order. Pursuant to Section 523(a)(19), the discharge does not enjoin the ODS from establishing damages, fines, restitution, disgorgement, attorney fees, or other enforcement remedies available under the ODS's enforcement powers and entering appropriate orders and judgments.[34]

Pentecost's motion to dismiss the Section 523(a)(19) claim for failure to state a claim is therefore overruled.

B. The Section 523(a)(19) claim was timely filed.

Bankruptcy Rule 4007(b) provides that "a complaint *other than* under §523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee

---

[32] See Complaint at ¶¶ 25-26, 29-32, and Exhibits 1 and 2 to Complaint.

[33] Exhibit 1 to Complaint at 8 (incorporated by reference into Exhibit 2).

[34] In fact, arguably this Court's role under Section 523(a)(19) is limited to declaring such orders and judgments non-dischargeable. See, e.g., Faris v. Jafari (In re Jafari), 401 B.R. 494 (Bankr. D. Colo. 2009) (debts arising from securities violations must be litigated, decided, and memorialized by tribunals outside the bankruptcy forum).

for the purpose of filing a complaint to obtain a determination under this rule."[35] Section 523(c) provides that a creditor holding a debt it claims is excepted from discharge under Section 523(a)(2), (4), or (6) is required to file a complaint seeking a declaration that the debt will not be discharged. All other exceptions to discharge set forth in Section 523(a) are self-executing, and if a dispute arises as to whether such a debt is excepted from discharge, a complaint seeking a determination may be filed "at any time."[36]

Because the July 20, 2020 deadline for filing a complaint under Section 523(c) does not apply to claims under Section 523(a)(19), Pentecost's motion to dismiss the claim as untimely is overruled.

    C.    <u>Plaintiff alleges sufficient facts to rebut Pentecost's defense that her Section 523(a)(4) claim is time-barred.</u>

Pursuant to Bankruptcy Rule 4007(c), a complaint objecting to discharge of a claim under Section 523(a)(4) "shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)."[37] Notice of the (1) commencement of the bankruptcy case, (2) first date set for the meeting of creditors, and (3) deadline to object to dischargeability of a debt, or the discharge in general, is generated by the Court and mailed to the official creditor list verified by the debtor. Due process mandates that notice be reasonably calculated to apprise a creditor of the bankruptcy case in time to object to

---

[35]    Fed. R. Bankr. P. 4007(b) (emphasis added).
[36]    <u>Id</u>.
[37]    Fed. R. Bankr. P. 4007(c).

dischargeability of the creditor's claim.[38]  "When a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr. P. 4007(c)."[39]

Under Section 523(a)(3), a debt is not discharged if the debt is not listed or scheduled in time to permit the "timely request for a determination of dischargeability . . . unless such creditor had notice or actual knowledge of the case in time for such timely filing and request."[40]

Allegations in the Complaint, taken in the light most favorable to Plaintiff, indicate that Pentecost knew that Plaintiff received her mail at her drop box at the 101st Street Address because this was the address to which Pentecost sent Plaintiff's brokerage account statements and quarterly reports.  It was also the payment and noticing address designated in the Note.  Further, Plaintiff alleges that Pentecost knew that Plaintiff did not pick up mail delivered to the 94th Street Address.  These allegations are sufficient to allow the Court to infer that Pentecost intended to deprive Plaintiff of timely notice of his bankruptcy case and the opportunity to present a timely objection to discharge.

The Complaint further alleges that Pentecost eventually told Plaintiff of his bankruptcy, thus providing actual notice, but persuaded her that the bankruptcy would have

---

[38]     See In re Schicke, 290 B.R. 792, 800 (B.A.P. 10th Cir. 2003), *citing* Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).

[39]     Id.

[40]     11 U.S.C. § 523(a)(3)(B).

no effect on the debt he owed her. When she later met with Pentecost in person, he again told her not to be concerned that his bankruptcy would affect her investments or the debt he owed to her. Plaintiff contends that she trusted Pentecost, and that she was entitled to rely on him to tell her the truth because he acted as her fiduciary with respect to her investments and financial affairs.

> Equitable tolling may be appropriate "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, [or] ... 'if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights.'"
>
> A court may find that equitable tolling applies to extend the deadline for an otherwise untimely cause of action if a plaintiff shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."
>
> Other factors relevant to the determination of whether equitable tolling applies to extend the deadline for an otherwise untimely cause of action include:
>
>> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.[41]

The circumstances set forth in the Complaint permit the Court to reasonably infer that Plaintiff's failure to timely assert her Section 523(a)(4) claim was attributable to Pentecost's calculated misdirection of the Chapter 7 Notice and his misrepresentations

---

[41] McNaughton v. Maytorena (In re Maytorena), 2011 WL 5509194 at *7 (Bankr. D. N.M.) (footnotes and citations omitted). See also Dennie v. Ochs (In re Ochs), 608 B.R. 252 (Bankr. D. Colo. 2019) (discussion of the non-jurisdictional nature of Rule 4007(c) deadline, and the elements of equitable tolling).

about the effect of his bankruptcy on her claim. Plaintiff filed her Complaint less than a month after the July 20, 2020 deadline, and only ten days after the ODS entered its suspension order, suggesting that Plaintiff was diligent in asserting her rights once apprised of them. In summary, Plaintiff makes a plausible case for extending the filing deadline under the doctrine of equitable tolling. Accordingly, at the pleading stage, Pentecost's motion to dismiss the Section 523(a)(4) claim as untimely must be denied.

D. <u>The Complaint contains sufficient factual matter to state a claim on the Note.</u>

Pentecost contends that the debt represented by the Note is "technically" owed by Sonus Rights Management LLC. However, on his Schedule F, Pentecost lists an unsecured personal loan debt to Plaintiff, arguably the same debt as represented by the Note. Further, it is arguable that he executed the Note in his personal capacity rather than on behalf of Sonus Rights Management LLC.

Thus, the Complaint contains adequate factual content to state a plausible claim that Pentecost is liable to Plaintiff on the Note. The Motion to Dismiss on the ground that Pentecost is not a party to the Note is denied.

**V. Conclusion**

For the reasons stated above, the Motion to Dismiss is denied in its entirety. Pentecost shall file an Answer to the Complaint on or before March 15, 2021.

**SO ORDERED** this 1st day of March, 2021.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT